UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

SAVANNAH BERGER,        §
    *Plaintiff,* §
       §
       §      Case No. 4:21-cv-00190
       §
v.        §
       §
       §
REPUBLICAN NATIONAL COMMITTEE, §
    *Defendant.* §

### <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Comes Now, Defendants The Republican National Committee ("Defendant"), and files this Motion for Summary Judgment as follows:

### INTRODUCTION

1.      Plaintiff filed suit against Defendant on March 3, 2021, claiming violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"). <u>Doc. 1</u>. Plaintiff alleges that "Defendant devised and implemented a campaign marketing strategy which includes the transmission of text messages through use of an automatic telephone dialing system." <u>Doc. 1</u> ¶ 10. Plaintiff alleges that she received multiple text messages to her cellular telephone that were sent with out Plaintiff's prior consent. *Id.* ¶¶ 11-12. Plaintiff further alleges that she "has been on the Do Not Call Registry since 2012 and was resubmitted in August 2019" and that the "unsolicited text messages placed to Plaintiff's cellular telephone were placed using an automated telephone dialing system (ATDS)." *Id.* ¶ 14-15.

2.      On these grounds, Plaintiff brings claims under section 227(b) and 227(c) of the TCPA. *Id.* at 3-4. The TCPA regulates the use of telephone technology and seeks to curb abusive telemarketing practices that threaten the privacy of consumers and businesses. *See Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012). Section 227(b) prohibits *the use of an ATDS* to make calls to a person's cell phone without their express prior consent. 47 U.S.C. § 227(b)(1) (emphasis added). "The Federal Communications Commission ("FCC") has previously held that text messages are equivalent to 'calls' for the purposes of the TCPA." *Fried v. Sensia Salon, Inc*., No. 4:13-cv-00312, 2013 U.S. Dist. LEXIS 168645, at *11 (S.D. Tex. Nov. 27, 2013) (citing See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003)). Section 227(c) prohibits making *telephone solicitations* to any person who is a subscriber to the do not call registry. *Id*. § 227(c)(3)(F) (emphasis added). Expressly excluded from section 227(c) are calls made by political organizations. *Libby v. Nat'l Republican Senatorial Comm*., No. 5:21-CV-197-DAE, 2021 U.S. Dist. LEXIS 140103, at *9 (W.D. Tex. July 27, 2021) ("political organizations are exempt from the Do Not Call Registry.").

3.      First, there is no violation of the section 227(b), as Defendant did not use an ATDS. Rather, Defendant used a peer-to-peer text messaging platform that requires direct human intervention to send each and every text message. Exhibit A (filed under seal). Second, Defendant is a registered political action committee and a political organization representing one of the major political parties in the United States, and therefore is not covered by any provision of section 227(c). For these reasons, Plaintiff's claims fail as a matter of law, and summary judgment should be granted to Defendants.

## ARGUMENTS AND AUTHORITIES

### A.      Standard of Law

4.      The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment

as a matter of law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505, 2514 (1986). Movant may show that the undisputed material facts affirmatively establish a right to judgment. Alternatively, movant may establish that the other party has the burden of proof at trial and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590, 123 L. Ed. 2d 317, 113 S. Ct. 1689 (1993), (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548, 2552 (1986)).

5.      In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86, 89 L. Ed. 2d 538, 106 S. Ct. 1348, 1355 (1986); Anderson, 477 U.S. at 257, 106 S. Ct. at 2514. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356. Fed. R. Civ. P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514. Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*, 477 U.S. at 248 106 S. Ct. at 2510. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id*. If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

6.      Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to be

drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only reasonable inferences in favor of the nonmoving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 119 L. Ed. 2d 265, 112 S.Ct. 2072, 2083 (1992).

**B.     There is no evidence that Defendant utilized an ATDS, and therefore no violation of the section 277(b) of the TCPA.**

7.      The TCPA prohibits the use of an ATDS "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1). An ATDS is defined as "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. § 227(a)(1). Recently, the Supreme Court of the United States clarified that "Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021). The Supreme Court went on to hold that "a necessary feature of an autodialer under §227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Id.*; *see Watts v. Emergency Twenty Four, Inc.*, No. 20-cv-1820, 2021 U.S. Dist. LEXIS 115053, at *6 (N.D. Ill. June 21, 2021) ("The Supreme Court concluded that the capacity to use a random or sequential number generator to either store or produce numbers is a 'necessary feature' of an ATDS under the TCPA, and therefore a device is not an ATDS if it simply stores and dials numbers without using a number generator.").

8.      In this present case, Plaintiff has no any evidence that Defendant sent any text messages to Plaintiff using an ATDS. This is because Defendant did not use any devices which qualify as an ATDS. Rather, Defendant used a peer-to-peer text messaging platform. <u>Exhibit A</u>. This system is commonly referred to as a "click-to-text" platform. As shown by the declaration of Mia Hunsicker, Chief Technology Officer, the system underlying the peer-to-peer text messaging platform requires direct human intervention to send each and every text message. *See Abante Rooter & Plumbing, Inc. v. Alarm.com Inc*., No. 15-CV-06314-YGR, 2018 U.S. Dist. LEXIS 132078, 2018 WL 3707283, at *9 (N.D. Cal. Aug. 3, 2018) (the "overwhelming weigh of authority" on "point-and-click systems," of which LiveVox HCI is one, shows they do not qualify as ATDS equipment "in light of the clicker agent's human intervention.") (quoting *Marshall v. CBE Group, Inc*., No. 16-CV-02406, 2018 WL 1567852 (D. Nev., March 30, 2018)). The peer-to-peer text messaging platform is similar to numerous other systems, usually referred to as "point and click" programs, that require direct human intervention to initiate calls and/or send texts, which have likewise been found not to qualify as an ATDS. *See, e.g.*, *Jenkins v. Gage, LLC*, No. 14 -2791, 2016 U.S. Dist. LEXIS 106769, at *1, 7 (N.D. Ga. Aug. 12, 2016) (granting summary judgment in favor of defendants and concluding that the platform at issue was not an autodialer when human intervention was involved); *Estrella v. LTD Fin. Servs.*, LP, No. 14-2624, 2015 U.S. Dist. LEXIS 148249, at *3 (M.D. Fla. Nov. 2, 2015) (finding summary judgment in favor of defendant appropriate when "the evidence demonstrates, at most, that the calls were placed manually with the use of human intervention through a 'point and click function.").

9.       Further, these messages as sent peer-to-peer, that is, they allow an online platform and/or mobile application to send text messages to recipients from a single sender to a single recipient to initiate a two-way communication. As such, each text message is sent by an individual to each

recipient. There is no automatic system which sends out batches or mass text messages to the recipients of the texts. As such, the peer-to-peer system lacks the capacity to use a random or sequential number generator to either store or produce phone numbers to be called or texted.

10.     The FCC has found that platforms that operate in essentially the same manner as peer-to-peer platform used by Defendant, finding that "if a texting platform actually 'requires a person to actively and affirmatively manually dial each recipient's number and transmit each message one at a time' and lacks the capacity to transmit more than one message without a human manually dialing each recipient's number, as suggested in the P2P Alliance Petition, then such platform would not be an 'autodialer' that is subject to the TCPA." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; P2P Alliance Petition for Clarification, 35 FCC Rcd 6526, 2020 FCC LEXIS 2371 **1 (F.C.C. June 25, 2020). The peer-to-peer platform requires the sender of the message to transmit each message one at a time to each intended recipient and lacks the capacity to transmit more than one message without a human manually dialing each recipient's number. Therefore, under the statutory definition of an ATDS, the Supreme Court of the United States' interpretation of the statute, and FCC's declaratory ruling, the peer-to-peer platform used by Defendant does not constitute an ATDS. As such, Plaintiff's TCPA claims fail as a matter of law.

### C.     Section 227(c) of the TCPA does not apply in this case, as it does not cover calls or messages sent by political organizations.

11.     The TCPA's legislative history cited statistical data indicating that "most unwanted telephone solicitations are commercial in nature" and that "unwanted commercial calls are a far bigger problem than unsolicited calls from political or charitable organizations." H.R. Rep. No. 102-317 at 16 (1991). The TCPA therefore authorized the FCC to establish a national database of consumers who object to receiving "telephone solicitations," which the act defined as commercial

sales calls. Pub. L. No. 102-243, 105 Stat. 2394 at § 3. Section 227(c) required the Federal

Communications Commission to create the National Do Not Call Registry. Section 227(c)(5)

provides a cause of action for "[a] person who has received more than one telephone call within

any 12-month period by or on behalf of the same entity in violation of" Section 227(c). It is a

violation of Section 227(c) to make or transmit a *telephone solicitation* to any person who is a

subscriber to the do not call registry. 47 U.S.C. § 227(c)(3)(F) (emphasis added). The private right

of action created by 47 U.S.C. § 227(c)(5) is accordingly limited to redress for violations of the

regulations that concern residential telephone subscribers. *Cunningham v. Politi*, No. 4:18-CV-

00362-ALM-CAN, 2019 U.S. Dist. LEXIS 102449, at *10 (E.D. Tex. Apr. 30, 2019). Some courts

have found that a cellular phone does not constitute a residential telephone. *Id.* (citing cases); *see*

*also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014) ("To start with, the

case concerned 47 U.S.C. § 227(b)(1)(B), which prohibits 'initiat[ing] any [prohibited] telephone

call to any residential telephone line . . . .' [T]he telephone number in question here. . . is a cell-

phone number.")); *Bates v. I.C. Sys., Inc*., No. 09-CV-103A, 2009 U.S. Dist. LEXIS 96488, 2009

WL 3459740, at *1 (W.D.N.Y. Oct. 19, 2009) ("[T]he TCPA differentiates between calls made to

cellular and residential lines.").

12.     Section 227(c)(5) is expressly limited to "telephone solicitations," which is statutorily

defined as:

> the initiation of a telephone call or message for the purpose of encouraging the
> purchase or rental of, or investment in, property, goods, or services, which is
> transmitted to any person, but such term does not include a call or message (A) to
> any person with that person's prior express invitation or permission, (B) to any
> person with whom the caller has an established business relationship, or (C) by a
> tax exempt nonprofit organization.

47 U.S.C.S. § 227(a)(4).

13.     Further, "political organizations are exempt from the Do Not Call Registry." *Libby v. Nat'l Republican Senatorial Comm.*, No. 5:21-CV-197-DAE, 2021 U.S. Dist. LEXIS 140103, at *9 (W.D. Tex. July 27, 2021) (citing The Do Not Call Registry, Federal Trade Commission, https://www.ftc.gov/news-events/media-resources/do-not-call-registry (last visited July 20, 2021)); *see* Q&A For Telemarketers & Sellers About DNC Provisions In TSR, Federal Trade Commission,  https://www.ftc.gov/tips-advice/business-center/guidance/qa-telemarketers-sellers-about-dnc-provisions-tsr (Aug. 2016) ("The do not call provisions do not cover calls from *political organizations*, charities, telephone surveyors, or companies with which a consumer has an existing business relationship.") (emphasis added); National Do Not Call Registry FAQs, Federal Trade Commission,     https://www.consumer.ftc.gov/articles/national-do-not-call-registry-faqs     (May 2021) ("Are any other types of calls still allowed under FTC rules if I'm on the Registry? The rules allow: political calls . . . ."). Defendant—the Republican National Committee—is a qualified national party committee. *See Statement of Organization*, FEC Form 1, *available at* https://docquery.fec.gov/pdf/828/202103259442258828/202103259442258828.pdf.  Defendant's political activities include selecting candidates to run for national office, running and contributing campaigns to advance these selected candidates, and contacting supporters and donors to advance their political aims and candidates. *See The Republican National Committee*, GOP, https://www.gop.com/ (last visited October 25, 2021).

14.     Plaintiff's claim under section 227(c) therefore fails for a variety of reasons. Most importantly, Defendant simply is not subject to section 227(c) of the TCPA, as this section does not cover political organizations. Defendant, a PAC representing one of two main political parties in the United States, is clearly a political organization. Further, Defendant did not transmit any messages encouraging the purchase or rental of, or investment in, property, goods, or services, and

therefore any messages sent by Defendant do not constitute telephone solicitations as defined by the TCPA. Exhibit A. Defendant does not sell goods or services, nor encourage people to rent or invest in property, nor any other activity that would qualify for telephone solicitations. *Id.* Rather, they nominate individuals for nation wide elections and support those individuals.  Plaintiff's Complaint also alleges the text messages were sent to her cellular phone, and not her residential telephone line, and therefore do not fall within the scope of section 227(c) of the TCPA. For these reasons, Plaintiff's 227(c) claims fail as a matter of law, and Defendant should be granted summary judgment on this claim.

## CONCLUSION

15.    Plaintiff cannot succeed on either claim alleged against Defendant. First, no ATDS was used in this matter, as direct human intervention was required for each text message to be send. Second, section 227(c) does not apply to Defendant, as that section expressly excludes political organizations. For these reasons, summary judgment should be granted to Defendant, and all claims against Defendant dismissed with prejudice.

WHEREFORE, PREMISES CONSIDERED, Defendant The Republican National Committee respectfully requests that this Court grant this Motion for Summary Judgment.

[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully submitted,

**MALONE FROST MARTIN PLLC**

*/s/ Xerxes Martin*
EUGENE XERXES MARTIN, IV
State Bar No. 24078928
Email: xmartin@mamlaw.com
JACOB MICHAEL BACH
State Bar No. 24100919
Email: jbach@mamlaw.com
**MALONE FROST MARTIN PLLC**
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
TEL: (214) 346-2630
FAX: (214) 346-2631

***COUNSEL FOR DEFENDANT***
***REPUBLICAN NATIONAL COMMITTEE***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded

through the **CM/ECF System** on this October 25, 2021 to the following recipients:

Amy Ginsburg
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
P: (215)540-8888
F: (877) 788-2864
teamkimmel@creditlaw.com

*Attorney for Plaintiff*

*/s/ Xerxes Martin*
XERXES MARTIN