**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **Savannah Berger,** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | **Case No.: 4:21-cv-00190-ALM** |
| **v.** | § | |
| | § | **Hon. Amos L. Mazzant** |
| **Republican National Committee,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

---

**Plaintiff, Savannah Berger's Response in Opposition to Defendant, Republican National Committee's Motion for Summary Judgment**

Respectfully submitted,


Kimmel & Silverman, P.C.

Jacob U. Ginsburg, Esq.
30 E. Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888 ext. 104
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

i

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT…………………………1

II.     PLAINTIFF'S STATEMENT OF THE ISSUES……………………………...3

III.    PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS…………4

IV.     ARGUMENT……………………………………………………………………..8

   A.  Standard for Motions for Summary Judgment………………………………………8

   B.  Defendant's Motion for Summary Judgment Should be Denied……….…………..9

        1.  Where the Party Moving for Summary Judgment Carries a
            "Heavy Burden" to be Afforded Such Relief, the RNC's Complete
            Disregard of Local Rule 56 Renders Its Motion Fatally Deficient………..11

        2.  Because the FCC Has Ruled that Cell Phones listed on the Do
            Not Call Registry Has the Protection of the Do Not Call Registry If Used
            for Residential Purposes, and Savannah Berger Used the Subject Phone
            Exclusively for Residential Purposes, She is Afforded Protection by
            Section 227(c)(5) of the TCPA………………………..……………..……..11

        3.  As Was the Case in Bennett v Veterans Aid Pac, the RNC Cites to
            No Statutory Language or Regulatory Code Which Crafted an Exemption
            for Political Fundraising Calls…………………………………….………15

        4.  As Was the Case in Bennett v Veterans Aid Pac, the RNC Cites to no
            Statutory Language or Regulatory Code Which Crafted an Exemption for
            Political Fundraising Calls………………………………………………17

        5.  If the Court is Inclined to Adopt an Exemption from the FTC's Website for
            Political Calls, Because the Text Messages at Issue Contain "Sales Pitches",
            that Informal Exemption Would Still Not Apply…………………………18

V.      CONCLUSION……………………………………………………………………20

## Table of Authorities

**Cases**

Bennett v. Veterans Aid Pac, Case No. 4:21-cv-340 (E.D. Tex.2021  ALM)…………………15, 16, 19

Cunningham v. Politi, 4:18-cv-00362 (E.D. Tex. 2019 ALM-CAN)………………………………..14

Hirsch v. USHealth Advisors, LLC, 337 F.R.D. 118, 131 (N.D. Tex. 2020)…………………………13

Izor v. Abacus Data Sys., U.S. Dist. LEXIS 130865, at *2 (N.D. Cal. Aug. 5, 2019)…………………13

McEwen v. NRA of Am., 2021 U.S. Dist. LEXIS 72133 (D. Me. Apr. 14, 2021)……………………..13

Mestas v. CHW Grp. Inc., 2020 U.S. Dist. LEXIS 236357 (D.N.M. Dec. 16, 2020)…………………13

Shelton v. Fast Advance Funding, LLC, 378 F. Supp. 3d 356, (E.D. Pa. 2019)……………..…………..14

Stross v. Redfin Corp., 730 F. App'x 198, 202 (5th Cir. 2018)………………………………………9

Thomas v. Great Atl. & Pac. Tea Co., 233 F.3d 326, 331 (5th Cir. 2000)…………………………..…..9

Wilson v. Tregre, 787 F.3d 322, 325 (5th Cir. 2015)……………………………………..…………..……8

United States ex rel. Fisher v. Ocwen Loan Servicing, LLC, No. 2016 U.S. Dist. LEXIS 68337
(E.D. Tex. May 25, 2016)……………………………………………………….…………….……………10


**Statutes and Rules**

16 C.F.R. § 310.44………………………………………………………….……..………16

Fed. R. Civ. P. 56(a)……………………………………………………………… Passim

E.D. Tex. LR CV-56..………………………………………………………….. Passim

47 U.S.C. § 227(c)(5)…………………………………………………………... Passim

47 C.F.R. § 64.1200………………………………………………………….……… Passim
In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,
18 F.C.C. Rcd. 14014, 14039 (2003)……………………………………………….…………..12-13

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| Savannah Berger, | § | |
| | § | |
| *Plaintiff* | § | |
| | § | **Case No.: 4:21-cv-00190-ALM** |
| v. | § | |
| | § | |
| Republican National Committee, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

AND NOW, Plaintiff Savannah Berger ("Plaintiff" or "Ms. Berger"), by and through her

undersigned counsel, hereby responds to the Motion for Summary Judgment filed by Defendant,

Republican National Committee ("Defendant" or "RNC").  In opposition thereto Plaintiff States

as follows:

**I.        INTRODUCTION AND SUMMARY OF ARGUMENT**

Savannah Berger did not consent or wish to receive a single fundraising text from the RNC.

Nonetheless, she received 355 of them.  The shocking volume of unwanted text messages which

contained coercive and deceptive sales pitches, caused her stress and anxiety.  Ms. Berger

registered her phone number on the Do Not Call registry to avoid such unwanted solicitation calls

and texts. As a result of the foregoing, Plaintiff filed suit against the RNC under the Telephone

Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  Defendant filed its motion for summary

judgment, which should be rejected for the following reasons:

- A party moving for summary judgment carries a heavy burden as the party is
  seeking to deprive the non-moving party of his or her day in court.  The RNC filed

1

its motion for summary judgment in complete disregard of E.D. Tex. Local Rule CV-56, in that it did not include a statement of undisputed facts or a statement of the issues.  Given the high burden it must meet, the RNC's motion for summary judgment should be denied for non-compliance with the local rules.

- Defendant argues that Plaintiff's claim cannot succeed because the Do Not Call registry purportedly only applies to residential subscribers.  However, defendant did not raise that argument on a 12(b)(6) or as an affirmative defense in its answer, thereby waiving that defense.  Furthermore, even if the defense were not waived, it is not a viable defense. Since 2003, the FCC has determined "residential subscribers" to include users of cell phones, who use said phones for residential purposes.  Ms. Berger uses her phone for exclusively residential purposes and is therefore afforded protection of § 227(c)(5).

- Defendant argues there is an exemption for political fundraising calls under 227(c)(5).  However, there is no language in the statutory language or accompanying code to support that proposition.

- If the Court looks to the legislative history as Defendant suggests, it could only be determined that the quote from 1991 cited by Defendant (which suggests political organizations call less frequently than commercial organizations) is inapposite to today's environment and a case where the RNC texted a non-consenting consumer 355 times.

- Furthermore, if the Court is to look to the FTC's website as suggested by Defendant, it would see that the FTC only exempted political calls with the caveat that they "can't also include a sales pitch."  The text messages at issue contained

very deceptive and coercive sales pitches seeking donations from Ms. Berger and feigning urgency and offering dubious "memberships" and "exclusive" VIP engagements with the then-president and/or his family.

For those reasons, which are articulated at length below, the RNC's motion for summary judgment must be denied.

## II.     PLAINTIFF'S STATEMENT OF THE ISSUES

E.D. Tex. Local Rule CV-56(b) dictates that a response to a motion for summary judgment must contain a response to the moving party's statement of the issues.  Because there is no statement of the issues from the moving party to which Plaintiff could respond, she offers her own statement of the issues, which follow below:

> **ISSUE 1**: Whether a party moving for summary judgment can meet the "heavy burden" required to be afforded that relief, when it entirety declined to follow the Local Rule CV-56, which governs motions for summary judgment.

**Proposed Adjudication of Issue 1:** No. A party moving for summary judgment that entirely disregards Local Rule 56 cannot meet the heavy burden to obtain that relief.

> **ISSUE 2:**  If a defendant files an answer that does not raise an affirmative defense, can the defendant then raise that argument on summary judgment.

**Proposed Adjudication of Issue 2**: No. that argument would be waived.

> **ISSUE 3:**  In the context of a TCPA claim asserted under 47 U.S.C. 227(c)(5), whether the Do Not Call Registry applies to cell phones used exclusively for residential purposes, as prescribed by the FCC.

**Proposed Adjudication of Issue 3**: Yes. The FCC and an overwhelming majority of Courts nationwide have determined that a cell phone used primarily for residential purposes has the protections of the Do Not Call registry.

**ISSUE 4:** Where there is no exemption the Do Not Call registry in the TCPA's statutory language or the accompanying regulatory code for political fundraising calls/texts, whether the Court should read such an exemption into the law based on quotes from the legislative debate on the statute.

**Proposed Adjudication of Issue 4:**  No.  While congress can amend the statute, it is is not the purview of the Court to expand the law based on the unrealized hopes of members of the legislature prior to enactment of the law.

**ISSUE 5:**  In a case where a political campaign committee sent a non-consenting consumer 355 fundraising text messages in 2019-2020, should the Court be persuaded by a quote from the legislative debate in 1991, which suggested that political fundraisers call consumers less frequently than commercial telemarketers?

**Proposed Adjudication of Issue 5**: No.  The volume of fundraising texts at issue renders the 1991 quote inapposite.

**ISSUE 6:** Where the FTC has stated on its website that political calls are exempt from the Do Not Call registry, unless the call contains a "sales pitch", whether a political campaign committee's text messages that coercively urge consumers to donate money to the committee and convey a sense of urgency for such donations, still be exempt

**Proposed Adjudication of Issue 6:** No.  Coercive fundraising messages contain a "sales pitch" by definition.

## III.    PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Local Rule CV-56(b) provides: "Any response to a motion for summary judgment must include: … (2) a response to the "Statement of Undisputed Material Facts."  Because there is no Statement of Undisputed Material Facts by the moving party to which Plaintiff could respond, Plaintiff provides her own Statement of Material Facts, which follows below:

4

1.      Plaintiff Savannah Berger is a resident of Collinsville, Texas where she resided at all times relevant hereto. (Ex. A, Declaration of Savannah Berger ("Berger Dec.¶ 2.").

2.      At all times relevant hereto, Ms. Berger owned a cell phone, the last four digits of which are 1310.

3.      Ms. Berger does not own a landline phone.  Therefore, she uses the above-referenced cell phone as her residential phone.  (Berger Dec. ¶ 4.)

4.      Ms. Berger has never operated any business on her cell phone.  Therefore, she used her cell phone for exclusively residential purposes.  (Id.)

5.      In or around August of 2019, shortly after acquiring that cell phone number, Berger registered said number on the Federal Trade Commission's Do Not Call registry. (Berger Dec. ¶ 6.)

6.      While Berger affirmatively registered the number for her new cell phone on the Do Not Call list in August of 2019, it also appears that the prior subscriber(s) to the 1310 phone number had registered the number on the Do Not Call list in July of 2005. (Id.); (Ex. A1, Do Not Call Verification for number ending in 1310.)

7.      Berger registered her number on the Do Not Call registry in order to obtain solitude from unwanted telemarketing and solicitation calls and text messages.  (Berger Dec., ¶ 6.)

8.      Ms. Berger did not ever consent to receiving calls or text messages from the Republican National Committee. (Berger Dec. ¶ 5.)

9.      Despite the fact that Berger did not consent to receiving a single fundraising call or text from the RNC, the RNC sent **355 text messages** soliciting donations from her. (Berger Dec. ¶ 7; Ex. B, RNC Account Notes.)

10.     The text messages contained sales pitches, which used deceptive and coercive language to induce Ms. Berger to donate money to the RNC. (Ex. B, RNC Account Notes.)

11.     From the RNC's account notes, examples of the fundraising texts that the RNC sent to Ms. Berger include:

- 01/09/20: "Pres. Trump wants to meet you in FL soon, Savannah. Flight and hotel covered. You'll even get to bring a guest. Donate in the NEXT HOUR to win: bit.ly/2QDXcdu"

- 02/01/20: "Pres. Trump: $82k short! I can't send this text to everyone, so I need YOU to act. For the 1ST TIME EVER an 8X-MATCH is LIVE for 1 hour. Act NOW";

- 01/21/20: "Last Chance! Your name is missing, Savannah. Make sure your name is broadcast LIVE during President Trump's Address. Donate in the next hour:"

- 10/26/20: "Pres. Trump: Hillary called you "deplorables." Now, Biden is calling you "chumps." Show them where you stand! Match increased to 800%";

- 07/31/20: "Pres Trump noticed you ignored his text, Savannah. Your name's still missing on the End of Month list. Donate in next hour for a 7X-Match: bit.ly/33iecwq;

- 08/20/20: "You didn't reply to our texts. Pres Trump chose a select group for a Beat the Dems 7X-Match. You're the last 1 remaining! Claim in the next hour: bit.ly/34iDUBy";

- 09/07/20: "Pres Trump: I texted you. My son, Eric, texted you. Now I'm texting you again. 8 hours left & we're short. Will you step up? 8X-Match! Donate: bit.ly/3i9jlM3;

- 10/19/20: "Are you there, Savannah? Pres Trump invited you to be a VIP at his upcoming rally but never heard back. You have 1 hour to enter. Act: magatxt.com/wP2e2lAVu"

- 10/25/20: "FINAL NOTICE: Trump Executive Membership offer expires at MIDNIGHT! If you don't step up, Democrats will WIN! Claim personalized certificate NOW: bit.ly/2Z2xu5f"

(*See* Ex. B, RNC Account Notes.)

12.     The text messages include links to donate to the RNC. (*See* Ex. C, select screenshots from RNC.)

13.     The astonishing volume of those unwanted text messages, which often included dramatic language and false urgency – ostensibly from the sitting President of the United States and his family – caused Ms. Berger anxiety and distress. (Berger Dec., ¶ 8.)

14.     In fact, Plaintiff often left her phone behind or turned it off because the dramatic, coercive and voluminous fundraising texts were irritating and caused her stress. (Berger Dec. ¶ 9.)

15.     As a result of turning off her phone to avoid fundraising texts, Plaintiff even missed emergency phone calls related to her family because she could not bear to have her phone turned on or with her. (Berger Dec., ¶ 9.)

16.     On November 6,2020, Ms. Berger inquired with "WinRed", the data company identified on the RNC website, why she was getting so many fundraising texts when she did not sign up for same. (Ex. D, Berger Inquiry with WinRed.)

17.     Neither WinRed nor the RNC provided Berger with any information or documentation suggesting why she received so many text messages. (Id.; Berger Dec., ¶ 11.)

18.     As a result of the foregoing, on March 11, 2021, Berger filed suit against the RNC alleging violations of §§ 227(b)[1] and 227(c) of the TCPA. (Doc. No. 1.)

19.     In the course of discovery, Plaintiff requested relevant documents from the RNC.

20.     The RNC produced its account notes reflecting an astonishing 355 fundraising texts containing deceptive and coercive sales pitches. (Ex. B, Account Notes.)

---

[1] As set forth below, Plaintiff withdraws her claim under § 227(b).

21.     The RNC also produced a document reflecting Plaintiff had been "black listed" on March 24, 2021- approximately two weeks after she filed suit against the RNC. (Ex. E, RNC black list identifying Ms. Berger and her number.)

22.     Tellingly, when Berger requested documents reflecting a contractual relationship between Plaintiff and the RNC, the RNC did not produce a single responsive document but proclaimed that "there is no need for a contractual relationship or agreement regarding consent" and "permission or consent is irrelevant to these claims." (Ex. F, Defendant's responses to Plaintiff's request for production nos. 1 and 2.)

23.     Ms. Berger finds it invasive, harassing and also astonishing that the RNC sent her such a high volume of text messages. (Berger Dec., ¶ 12.)

24.     No commercial organization has ever placed even close to that amount of telemarketing calls or texts to her.  (Berger Dec., ¶ 13.)

25.     Berger finds it especially frustrating because she feels as though politicians and those who work in politics act "above the law" and as though the rules that apply to others do not apply to her. (Berger Dec., ¶ 14.)


IV.     ARGUMENT

   A.  Standard for Motions for Summary Judgment

26.     Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." Wilson v. Tregre, 787 F.3d 322, 325 (5th Cir. 2015) (citation omitted). Although a "mere 'metaphysical doubt' about material facts

is insufficient to preclude a grant of summary judgment," <u>Thomas v. Great Atl. & Pac. Tea Co</u>., 233 F.3d 326, 331 (5th Cir. 2000), **a movant's burden to establish its right to summary judgment is heavy**. <u>Stross v. Redfin Corp</u>., 730 F. App'x 198, 202 (5th Cir. 2018)(emphasis added) *citing* <u>Stafford v. United States</u>, 611 F.2d 990, 993 (5th Cir. 1980).

### B.   Defendant's Motion for Summary Judgment Should be Denied.

For the reasons articulated at length below, Defendant's motion for summary judgment should be denied.

**1.   <u>Where the Party Moving for Summary Judgment Carries a "Heavy Burden" to be Afforded Such Relief, the RNC's Complete Disregard of Local Rule 56 Renders Its Motion Fatally Deficient.</u>**

27. Eastern District of Texas Local Rule CV-56(a) provides:

> (a) Motion. Any motion for summary judgment must include: **(1) a statement of the issues to be decided by the court; and (2) a "Statement of Undisputed Material Facts."** If the movant relies upon evidence to support its motion, the motion should include appropriate citations to proper summary judgment evidence as set forth below. Proper summary judgment evidence should be attached to the motion in accordance with Section (d) of this rule (emphasis added).

28.   Here, Defendant RNC filed its motion for summary judgment, where it declined to include a statement of the issues to be decided by the court, and declined to include a "statement of undisputed material facts." (Doc No. 13.)

29.   Now, the Court is obligated to adjudicate this motion and Plaintiff is forced to respond to this motion, and where the moving party simply opted not to lay the proper foundation or follow the proper protocols in support of the relief Defendant seeks.

30.   Summary judgment is a motion where the moving party carries an especially "heavy burden" <u>Stross v. Redfin Corp</u>., 730 F. App'x 198, 202 (5th Cir. 2018). The reason for that

9

is self-explanatory: if granted, the non-moving party is deprived of his/her day in court and deprived of the right to jury trial.

31.     In <u>United States ex rel. Fisher v. Ocwen Loan Servicing, LLC</u>, No. 4:12-CV-543, 2016 U.S. Dist. LEXIS 68337 E.D. Tex. May 25, 2016), this Honorable Court declined to consider the mortgage company defendant's motion for summary judgment because it was not filed in compliance with the Local Rules.  <u>Id</u>. at *18 n.4 ("The Court finds that **Defendants' request was not appropriately filed under the Local Rules**, and therefore, the Court will not consider it (emphasis added)."

32.     Similarly, in <u>Neale v. Mid-West Truck,</u> Civil Action No. 5:17-CV-078-C, 2018 U.S. Dist. LEXIS 237376 (N.D. Tex. Aug. 28, 2018), the Honorable Judge Sam Cummings of the Northern District of Texas denied the moving party's motion for summary judgment on the basis that the moving party failed to comply with the local rules:

> The Local Rules of this Court are not idle requirements, and failure to follow them may result in pleadings or evidence being stricken from the summary judgment record...The Court finds that Mid-West Truck's objections to Neale's Motion for Summary Judgment are well founded and that the Motion should be DENIED for failure to comply with the Local Rules.

<u>Neale</u>, at *5-6.

33.     Here, it would not be an overly harsh result for the Court to deny summary judgment on the grounds of non-compliance with the Local Rules.  It is not as though judgment would be entered for Plaintiff.  The RNC would still have every opportunity to present its defenses. It would simply not be able to deprive Savannah Berger of her day in court without having following the proper protocol.

34.     Savannah Berger (like many Americans) feels that politicians and those who work in politics act as though the rules do not apply to them. (Berger Dec. ¶ 14.)

35.     Plaintiff understands that non-compliance comes in varying degrees, however where this Court declined to consider a mortgage company's motion for summary judgment on the basis of non-compliance with local rules, it is reasonable that this Court apply the same standard to the RNC.

36.     Summary judgment applies a heavy burden on the moving party and the RNC's non-compliance with the Local Rules renders its motion fatally deficient.

37.     Accordingly, Plaintiff respectfully requests that this Honorable Court deny the RNC's motion for summary judgment on grounds of non-compliance.

**2.   Because the FCC Has Ruled that Cell Phones listed on the Do Not Call Registry Has the Protection of the Do Not Call Registry If Used for Residential Purposes, and Savannah Berger Used the Subject Phone Exclusively for Residential Purposes, She is Afforded Protection by Section 227(c)(5) of the TCPA.**

38.     In its Motion for Summary Judgment, the RNC argues that § 227(c)(5) of the TCPA and the Do Not Call list do not afford protection to Plaintiff in this case because it is a cell phone, rather than a landline. (Doc. No 13, ¶ 11.)  For reasons stated below, that argument is misguided.

39.     Section 227(c)(5) of the TCPA allows a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the prescribed regulations. 47 U.S.C. § 227(c)(5).

40.     First, the operative Complaint alleged that Berger used a cell phone (Doc. No. 1), and Defendant filed an answer rather than a motion to dismiss.  (Doc. No. 4.) In its answer, the

argument regarding the use of a cell phone was not raised in the answering paragraphs or the affirmative defenses.  Accordingly, that argument is waived.[2]

41.     That subsection pertains to calls to persons on the FTC's National Do-Not-Call Registry. *See* Id.; *See* 47 C.F.R. § 64.1200(d)(3).

42.     While the specific language of the subsection provides that the regulations implemented pursuant to Subsection 227(c) apply to telephone solicitations made to "residential telephone subscribers", in 2003, the FCC (the agency that implements the TCPA) ruled that wireless numbers are presumed to belong to "residential subscribers" by virtue of their placement on the Do Not Call list:

> [W]e believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections. As indicated above, Congress afforded wireless subscribers particular protections in the context of autodialers and prerecorded calls. In addition, although Congress expressed concern with residential privacy, it also was concerned with the nuisance, expense and burden that telephone solicitations place on consumers. Therefore**, we conclude that wireless subscribers may participate in the national do-not-call list.** As a practical matter, since determining whether any particular wireless subscriber is a "residential subscriber" may be more fact-intensive than making the same determination for a wireline subscriber, **we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers."** Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

 (footnotes omitted)(emphasis added).

---

[2] Defendant also argues it was not selling "goods or services" but a review of the text messages reflects that is not true.  Defendant offers "VIP memberships", an opportunity to (supposedly) be named by the president in a speech, etc. (Ex. B; Ex. C.)  Defendant is clearly offering memberships and political services.

43.     The FCC further held that "the national database should allow for the registration of wireless telephone numbers, and that such action will better further the objectives of the TCPA . . . ." Id. at *14037.

44.     A vast majority of courts that have considered section 227(c)'s application to cell phones have followed the FCC's Rules and Regulations and concluded the Do Not Call list and section 227(c)(5) do, in fact, apply to cell phones.  *See* Hirsch v. USHealth Advisors, LLC, 337 F.R.D. 118, 131 (N.D. Tex. 2020) ("Defendants suggest that cell phones, as a matter of law, cannot be 'residential subscribers'… **But the Court disagrees with this isolated authority, and instead follows common sense and the greater weight of authorities in making this a fact question for trial**")(emphasis added)(internal quotations omitted); Strange v. ABC Co., No. 19-1361, 2021 U.S. Dist. LEXIS 38882, at *10 (W.D. La. Mar. 1, 2021) ("From this, the Court finds persuasive authority that plaintiffs, like Strange, who register their cell phones with do-not-call registries are presumed to be residential subscribers"); *see also* Stevens-Bratton v. TruGreen, Inc., 437 F. Supp. 3d 648, 2020 WL 556405, at *4 (W.D. Tenn. 2020)("A cellular telephone can satisfy the residential telephone subscriber element of § 64.1200(c) & (d)"); Izor v. Abacus Data Sys., No. 19-cv-1057, 2019 U.S. Dist. LEXIS 130865, at *2 (N.D. Cal. Aug. 5, 2019) (same); Hodgin v. Parker Waichman LLP, No. 14-cv-733, 2015 U.S. Dist. LEXIS 192262, , at *3 (W.D. Ky. Sept. 30, 2015) ("[T]he FCC has been clear in interpreting 'residential subscriber' to include cell phones"); Mestas v. CHW Grp. Inc., 2020 U.S. Dist. LEXIS 236357, at *34 (D.N.M. Dec. 16, 2020) ("this Court agrees and finds that a cell phone user can qualify as a residential telephone subscriber under 47 C.F.R. § 64.1200(c)"); McEwen v. NRA of Am., No. 2:20-cv-00153-LEW, 2021 U.S. Dist. LEXIS 72133, at *10 (D. Me. Apr. 14, 2021)("In these rules, protections are extended to individuals not only with respect to their residential land lines, but also with respect to their

13

personal cellular telephones"); <u>Shelton v. Fast Advance Funding, LLC,</u> 378 F. Supp. 3d 356, 363 (E.D. Pa. 2019) ("The Court further concludes, pursuant to § 227(c)(5), that Defendant's violations were knowing and willful. Defendant has admitted that it "lacks any sort of express prior consent, written, verbal, or otherwise, to contact Plaintiff on his cellular phone for commercial purposes."

45.     The RNC erroneously cites to Judge Nowak's decision (which was adopted by this Court) in <u>Cunningham v. Politi</u>, No. 4:18-CV-00362-ALM-CAN, 2019 U.S. Dist. LEXIS 102449, in support of its proposed interpretation of 227(c)(5). (Doc. No. 13, ¶ 11.)  However, that case is not controlling here for several reasons.

46.     First, in <u>Cunningham v. Politi</u>, Judge Nowak's language about cell phones and 227(c)(5) was specific to the *pro se* plaintiff in that case (a *pro se* plaintiff who filed over 200 TCPA cases): "Recent courts considering claims asserted by Plaintiff have found this not to encompass Plaintiff's cellular phones and have dismissed his claims." <u>Cunningham v. Politi</u> at *11-12 (E.D. Tex. Apr. 30, 2019).

47.     Second, the plaintiff in <u>Cunningham v. Politi</u> did not bring to the Court's attention the 2003 FCC Rules and Regulations which stated "we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." *See* 4:18-cv-00362-ALM-CAN, Doc. No. 60.

48.     Finally, in  Cunningham v. Politi Judge Nowak went on in that opinion to articulate that even if the plaintiff's cell phone was protected by 227(c)(5), Mr. Cunningham's complaint failed to articulate the specific violation at issue.  ("At best, it is unclear how the provision was violated. As such, Plaintiff has not provided a sufficient basis in the pleadings to proceed on his TCPA claim under § 227(c).")

49.     Here, Savannah Berger does not have a landline phone and uses her cell phone as her home phone.  She does not operate any business on that cell phone.  (*See* Berger Dec.)

50.     In other words, Berger uses the subject phone for exclusively residential purposes.

51.     Furthermore, unlike the plaintiff in <u>Cunningham v Politi</u> Savannah Berger has cited to authority – the FCC Rules and Regulations and numerous cases which have followed that principle- that cell phone users can be residential subscribers.

52.     Finally, where it was not clear exactly what the purported violation was in <u>Cunningham v Politi</u>, it is very clear what the violations are issue are here: Savannah Berger did not consent to receive fundraising calls or text messages from the RNC, yet the RNC sent her 355 solicitation texts which contained a sales pitch.

53.     Based on the clear parameters set by the FCC since 2003, Ms. Berger has the protection of the Do Not Call registry and § 227(c)(5) of the TCPA.

### 3.  As Was the Case in *Bennett v Veterans Aid Pac*, the RNC Cites to No Statutory Language or Regulatory Code Which Crafted an Exemption for Political Fundraising Calls.

54.     In support of its motion for summary judgment, Defendant contends that calls made by political organizations are exempt from the Do Not Call list.  (Doc. No. 13, ¶ 13.)

55.     Defendant, however does not cite to any statutory language or regulatory code in support of that proposition.  (Id.)

56.     That is not by accident.

57.     That is because Congress and the regulatory agencies (FTC and FCC) crafted numerous exemptions to the TCPA and Do Not Call registry, but did not codify any exemption for fundraising calls from political PAC's.

58.     For instance, 16 C.F.R. § 310.44 lists an exemption for calls "whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited."   Likewise, 16 C.F.R. § 310.6 (a)5 provides: "Solicitations to induce charitable contributions via outbound telephone calls are not covered by § 310.4(b)(1)(iii)(B) of this Rule." Those provisions do not provide a similar exemption for political PACs.

59.     Defendant cites to the case <u>Libby v. Nat'l Rep. Sen. Cte.</u>, which accepted that political fundraising calls were exempt (the issue was not fully briefed in that case), but overlooks <u>Bennett v. Veterans Aid Pac</u>, 4:21-cv-00340 (E.D. Tex.), where this Court rejected an argument almost identical to that presented by Defendant.

60.     In <u>Bennett</u> case, the defendant PAC argued it was exempt from the Do Not Call registry and 227(c)(5) because it was a political PAC and the calls were for political fundraising. 4:21-cv-00340 (Doc. No. 9.)  The plaintiff in that case responded by pointing out there is no exemption for political fundraising calls in the statutory language of the TCPA or the accompanying regulatory code, and the FTC's website only offers an exemption for calls without a "sales pitch". (4:21-cv-00340 (Doc. No. 16.)

61.     After the issue was fully briefed, this Court denied the defendant PAC's motion to dismiss (Id., Doc. No. 19.)

62.     The RNC has provided no basis for the Court to stray from its ruling in <u>Bennett</u>. Defendant has not and cannot cite to any codified exemption for political fundraising calls in the statute or the accompanying Code of the TCPA.

63.     Finally, Defendant makes the perplexing argument that the texts at issue are exempt because the RNC is "a PAC representing one of the two main political parties in the United States."

(Doc. No. 13, ¶ 14.)  Obviously, the RNC performs fundraising for Republicans - and the DNC performs fundraising for Democrats.  The TCPA was passed by a Democratic Congress with Bipartisan support and signed by a Republican president, George H.W. Bush.  Representatives and senators from both parties could have crafted an exemption for political fundraising calls but did not do so.  Furthermore, in the various amendments to the TCPA, representatives and senators from both parties could have crafted an exemption for such calls. This highlights that given the choice to write into the law an exemption for the two main political parties, the choice was not to do so.   Again, they did not.  Defendant's argument is therefore self-defeating.

> **4. If the Court is Inclined to Look at the Legislative History When Determining Whether There is an Implied Exemption for Political Fundraising Calls, the Quote from Legislative Debate Cited by Defendant is Inapposite Given the Extraordinary Volume of Fundraising Texts That the RNC Sent to Ms. Berger Here.**

64.    Assumedly because there is no exemption to 227(c)(5) and the Do Not Call list for political fundraising calls in the statutory language or the regulatory code, the RNC cites to a quote in the legislative debate before the enactment of the TCPA in 1991 in support of its position.  (Doc. No. 13, ¶ 11.)

65.    Specifically, the RNC cites a quote from the legislative history: "unwanted commercial calls are a far bigger problem than unsolicited calls from political or charitable organizations." (Id. *citing* H.R. Rep. No., 102-317 at 16.)

66.    While Plaintiff does not challenge that this may have been true in 1991, the RNC reminded Savannah Berger 355 times it is not true today.

67.    The citation to legislative debate from 1991 does not lend credence to the RNC's positon and in fact contradicts it as the RNC here and political organizations in general can and do weaponize technology to flood recipients with unwanted fundraising messages.

17

68.     Legislative history is not controlling law.  While quotes from the legislative history certainly *can* be persuasive and illuminating, this quote only serves to undermine Defendant's position.

69.     Savannah Berger has never received close to the number of calls or texts from a commercial organization or company as she did from the RNC. (Berger Dec. ¶ 13.)

**5.  If the Court is Inclined to Adopt an Exemption from the FTC's Website for Political Calls, Because the Text Messages at Issue Contain "Sales Pitches", that Informal Exemption Would Still Not Apply.**

70.     In its motion for summary judgment, Defendant erroneously argues that the FTC has exempted political fundraising calls and texts from the Do Not Call registry. (Doc. No. 13, ¶ 13.)

71.     However, if one is to actually read the websites which set forth these informal exemptions,[3] they too completely undermine Defendant's position.

72.     For instance, in paragraph 13 of Defendant's motion, it cites the FTC's website "The do not call provisions do not cover calls from political organizations…" (Doc. No. 13, ¶ 13.)

73.     However, if one actually clicks the link to that FTC website, he or she will see that this list is followed by the qualifier: "**But these calls can't also include a sales pitch**." (Ex. B, FTC National Do Not Call Registry FAQ's, p. 3, *available at*: https://www.consumer.ftc.gov/articles/national-do-not-call-registry-faqs.)

---

[3] Informal as in they have not been codified.

74.     If the text messages at issue do not qualify as "sales pitches", then that phrase would have no meaning.  By failing to include the qualifier, Defendant is advancing a position that it should know is not accurate and would lead this Court to an entirely opposite understanding.

75.     Here, it is clear that the text messages created a sense of urgency where the recipient (Ms. Berger) had to donate money (the "sales pitch"), which included the supposed views and/or originate with, the then-sitting president of the United States. (Ex. B; account notes; Ex. C Screenshots.)

76.     The text messages purported to offer having Berger's "name displayed live during [President Trump's] historic speech", and used guilt and coercion to convince her to donate money with sales pitches, such as "Are you there, Savannah? Pres Trump invited you to be a VIP at his upcoming rally but never heard back. You have 1 hour to enter..." (Ex. B, Account Notes, p. 1, message 10/19/20.)

77.     A similar argument and reliance on the FTC's website as the RNC uses here, was used by Veterans Aid Pac in the <u>Bennett</u> matter and it was rejected by the Court.  (E.D. Tex. Case No. 4:21-cv-340, Doc. No .9; Doc. No. 19.)

78.     Even if the Court looks to the FTC's website for an exemption for political calls, the RNC's text messages here would fall outside that exemption because they clearly include sales pitches.

79.     For the foregoing reasons, Defendant's motion for summary judgment should be denied.

**[THIS PORTION OF THE PAGE IS INTENTIONALLY LEFT BLANK]**

**V.     CONCLUSION**

For the foregoing reasons, Plaintiff Savannah Berger respectfully requests that Defendant

Republican National Committee's Motion for Summary Judgment be denied.

DATED: November 15, 2021                By:  _/s/ Jacob U. Ginsburg_
                                             Jacob U. Ginsburg, Esq.
                                             Kimmel & Silverman, P.C.
                                             30 E. Butler Ave.
                                             Ambler, PA 19002
                                             Phone: (215) 540-8888 ext. 104
                                             Fax: (8777) 788-2864
                                             jginsburg@creditlaw.com
                                             teamkimmel@creditlaw.com

**CERTIFICATE OF SERVICE**

I, Jacob U. Ginsburg, hereby certify that I served a true and correct copy of the foregoing

on all parties of record via ECF on November 15, 2021.

Xerxes Martin
8750 N. Central Expressway
Northpark Central, Suite 1850
Dallas, Texas 75231

_/s/ Jacob U. Ginsburg_

20